**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 24-CR-48** |
| **ISIAH KANGAR** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant Isiah Kangar is a native and citizen of Liberia who assumed his brother's identity to unlawfully obtain a visa and permanent resident card and to attempt to obtain U.S. citizenship. On November 5, 2024, the defendant pleaded guilty to three of four counts in the indictment against him, charging him with conspiracy to defraud the United States, in violation of 18 U.S.C. § 371 (Count One); fraud, misuse of visa, permits, and other documents in violation of 18 U.S.C. § 1546(a) (Count Two); and unlawful procurement of citizenship or naturalization, in violation of 18 U.S.C. § 1425(a) (Count Three). The government agreed to dismiss Count Four, charging him with aggravated identity theft under 18 U.S.C. § 1028A. Finally, the defendant agreed to a Stipulated Judicial Order of Removal and will be deported to Liberia at the conclusion of his sentence.

Paragraph 12(a) of the plea agreement between the government and the defendant sets the base offense level for Counts One through Three at 12 under USSG § 2C1.1. With a two-level reduction for acceptance of responsibility, the defendant's offense level is 10, which equates to a guideline of 6-12 months' imprisonment. The defendant's Presentence Report (PSR), in contrast, calculates a final offense level one point higher under USSG § 2L2.2(b)(4)(A) for a range of 12-18 months. The government nonetheless is bound by the stipulation contained in the

plea agreement and recommends a sentence at the top of the range agreed upon in the plea agreement, which aligns with the bottom of the range calculated in the PSR: 12 months' imprisonment.

## I. BACKGROUND

On February 7, 2024, a federal grand jury returned a four-count Indictment against defendant Isiah Kangar, charging him with conspiracy to defraud the United States, in violation of 18 U.S.C. § 371 (Count One); fraud, misuse of visa, permits, and other documents in violation of 18 U.S.C. § 1546(a) (Count Two); unlawful procurement of citizenship or naturalization, in violation of 18 U.S.C. § 1425(a) (Count Three); and aggravated identity theft, in violation of 18 U.S.C. § 1028A (Count Four). These charges arise from the defendant's scheme to defraud the United States between approximately June 1, 2009, and February 7, 2024, during which time the defendant, a native and citizen of Liberia, used his brother's identity to unlawfully obtain a visa and permanent resident card and to attempt to obtain U.S. citizenship.

On November 5, 2024, the defendant pleaded guilty to Counts One, Two, and Three pursuant to a plea agreement. The government agreed to dismiss Count Four.

## II. SENTENCING CALCULATION

### A. Statutory Maximum Sentence

The Court may impose the following statutory maximum penalty:

The maximum possible sentence for Count One (conspiracy to defraud the United States) is 5 years' imprisonment, a 3-year period of supervised release, a $250,000 fine, and a $100 special assessment.

The maximum possible sentence for Count Two (fraud, misuse of visas, permits, and other documents) is 10 years' imprisonment, a 3-year period of supervised release, a $250,000 fine, and a $100 special assessment.

The maximum possible sentence for Count Three (attempted unlawful procurement of citizenship or naturalization) is 10 years' imprisonment, a 3-year period of supervised release, a $250,000 fine, and a $100 special assessment.

The Total Maximum and Mandatory Minimum Sentence is: 25 years' imprisonment, 3 years' supervised release, a $750,000 fine, and a $300 special assessment. Following completion of the sentence, the defendant will be removed from the United States.

**B. Sentencing Guidelines Calculation**

As set out above, Paragraph 12(a) of the plea agreement between the government and the defendant sets the base offense level for Counts One through Three at 12 under USSG § 2C1.1. With a two-level reduction for acceptance of responsibility under USSG § 3E1.1, the defendant's offense level is 10. With a criminal history category of I, this equates to a guideline of 6-12 months' imprisonment. The government is bound by this sentencing stipulation, as set out in the plea agreement, even if the Court were to calculate a higher guideline range under USSG § 2L2.2(b)(4)(A) as set out in the Presentence Report.

## III. <u>ANALYSIS</u>

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. §3553(a) suggests that the most appropriate sentence is 12 months' imprisonment, which is within both the guidelines agreed to in the plea agreement and the guidelines as calculated by the Presentence Report.

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range.'" *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011)). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Id*. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been

found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. ' 3553(a).[1]

**(1) The nature and circumstances of the offense and the history and characteristics of the defendant;**

The defendant's fraud on the U.S. government spanned over 15 years and began when he applied for an immigrant visa in his brother's name because—unlike his brother—he was not eligible to immigrate to the United States. To perpetrate his fraud, the defendant falsified documents, deceived a U.S. Department of State (State Dept.) Consular Affairs officer, acquired false identification documents, and lied under oath to a U.S. Citizenship and Immigration Services (USCIS) examiner.

The State Dept. and the U.S. Department of Homeland Security (DHS) are the two federal agencies tasked with administering the U.S. immigration system and ensure that visa applicants are properly vetted for entry into the United States. To that end, the State Dept. interviews visa candidates and reviews their supporting documentation in assessing visa eligibility. While the State Dept. has fraud detection measures in place, including an in-person interview requirement, the system is not foolproof. What made Kangar's fraud especially difficult to detect was the fact that he assumed his brother's identity and was therefore familiar

[1] Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The Third Circuit has held that "district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the "not greater than necessary" language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'" *United States v. Dragon*, 471 F.3d 501, 506 (3d Cir. 2006) (*quoting United States v. Navedo Concepcion*, 450 F.3d 54, 58 (1st Cir. 2006)).

with his brother's biographical data and able to obtain genuine documents in his brother's name, including a police record check and a birth certificate.

Relying on the State Dept.'s findings, the DHS admitted the defendant into the United States and granted him permanent resident status, believing he was someone else. Once he obtained his permanent resident status, Kangar, emboldened, actively continued his fraud by obtaining government documents in his assumed name, lying to Homeland Security Investigations (HSI) agents who questioned him at an airport, and attempting to become a naturalized citizen. In fact, even when his falsehoods were directly challenged by a USCIS examiner, he remained undeterred and steadfast in his lies.

Moreover, even though he purports to accept responsibility for the current offense, Kangar now claims the visa opportunity was simply made available to him because his brother was "nowhere to be found." PSR ¶ 33. The evidence does not support this claim. The evidence suggests that Kangar's fraud involved preparation and planning since he obtained documents bearing his brother's name with his own photograph, including a Liberian passport.

Finally, while the defendant may argue that his offense is in essence a victimless crime, since he has lived in the United States without issue for 15 years, it is worth noting that since there are a finite number of immigrant visas allotted each year, Kangar took the spot of a deserving potential immigrant.[2]

---

2 Pursuant to Title 8 U.S.C. § 1153(a)(2), the number of visas available for unmarried children of lawful permanent residents are capped at a particular number set by Congress.

**(2) The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;**

A sentence at the top of the stipulated guidelines range reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. This sentence accounts for the fact that the defendant committed a multi-year fraud on the United States and received valuable immigration benefits to which he was not entitled.

In addition, a sentence at the top of the guidelines also reflects the fact that defendant perpetrated the multi-year fraud by repeatedly misrepresenting his identity on numerous occasions to obtain increasingly valuable benefits from the United States, including the most valuable of all: U.S. citizenship. In other words, the fraud was not an isolated incident and then abandoned by the defendant. Rather, the defendant – believing he could get away with his crimes – became emboldened by his conduct and instituted a multi-year effort to defraud the government so that he could not only illegally remain in the United Staes, but also to illegally become a United States citizen. The defendant was not satisfied with simply gaining entry to the United States. Instead, he acted with impunity as he repeatedly used his false identity to obtain permanent resident status and even apply for naturalization.

**(3) The need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant;**

As discussed above, the effective administration of U.S. immigration policy relies, in large part, on the candor and good faith of visa applicants. The defendant's fraud was especially pernicious and difficult to detect because he committed identity theft and presented genuine documents. The sentence imposed in this case will send a message, one way or another, to individuals who are considering committing fraud to enter the United States. The government respectfully submits that a sentence at the top of the guidelines range would "reflect the

seriousness of [the defendant's] offense . . . promote respect for the law . . . provide just punishment for the offense . . . protect the public from further crimes of the defendant . . . [and] afford adequate deterrence to [further] criminal conduct. . ." 18 U.S.C. § 3553 (1)(A)(B)(C).

**(4) The need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner;**

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." § 3553(a)(2)(D). While serving an appropriate sentence, the defendant will have the opportunity to take advantage of educational or vocational training.

**(5) The guidelines and policy statements issued by the Sentencing Commission; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;**

The sentencing guidelines aim to achieve uniform and appropriate treatment of like crimes, and represent the distillation of more than 30 years of careful study of sentencing practices across the country. Here, the guidelines range reflects the nature of the crime committed by the defendant, as well as his acceptance of responsibility. PSR ¶¶ 40-51. Consequently, a sentence of 12 months imprisonment, a within-guideline sentence, is fair and appropriate.

**(6) The need to provide restitution to any victims of the offense.**

Restitution is not an issue in this case. 18 U.S.C. § 3553(a)(7).

## IV. CONCLUSION

For the reasons above, the government respectfully recommends that the Court impose a sentence within the guideline range of 12 months' imprisonment.

Respectfully submitted,

DAVID METCALF
United States Attorney

*/s/ Patrick Brown*
PATRICK BROWN
Assistant United States Attorney

CHELSEA SCHINNOUR
Trial Attorney
U.S. Department of Justice
Human Rights and Special Prosecutions Section

**CERTIFICATE OF SERVICE**

I hereby certify that this Sentencing Memorandum has been served on the Filing User identified below through the Electronic Case Filing (ECF) system:

Nancy MacEoin, Esquire
Assistant Federal Defender
Federal Community Defender Office
Suite 540 West, Curtis Center
Independence Square West
Philadelphia, PA 19106

*/s/ Patrick Brown*
PATRICK BROWN
Assistant United States Attorney

DATED: May 6, 2025.